W. B. Woosley v. Commissioner.
W. Woosley v. Commissioner
Docket No. 2981.
United States Tax Court
1946 Tax Ct. Memo LEXIS 20; 5 T.C.M. (CCH) 1038; T.C.M. (RIA) 46283; December 6, 1946
*20 Held, that petitioner and his wife were partners within the meaning of the applicable Revenue Acts in conducting the business and earning the income of Woosley Knitting Mills, but not to the extent claimed by petitioner, and that the shares of partnership income attributable to the real interest of the wife in the partnership are not taxable to the petitioner. Held, further, that the rentals from an interest in a certain building conveyed by petitioner to a trust are not petitioner's income. Held, further, that the income of a certain other building purchased by petitioner's wife is not income to him. Held, further, that one-half of the gain realized from a joint stock and commodity trading account of petitioner and his wife was gain of the wife and that petitioner is not taxable therewith. Held, further, that certain dividends received were those of the wife and consequently not taxable to petitioner. Held, further, that the gain on certain stock upon its sale is taxable to petitioner. Albert W. Taber, Esq., and Charles L. Claunch, Esq., Chattanooga Bank Bldg., Chattanooga, Tenn., for the petitioner. Frank M. Thompson, Jr., Esq., and F. L. Van Haaften, Esq., for *21 the respondent. TYSON Memorandum Findings of Fact and Opinion The respondent determined deficiencies in income tax of $1,133.83 for 1938, $2,518.74 for 1939, and 5,247.32 for 1940. The deficiencies result from various adjustments made by the respondent in computing the petitioner's income. The petitioner concedes the correctness of the respondent's action with respect to certain items, and complains only of the following additions to his income: (1) $4,321.38 for 1938, $5,220.48 for 1939, and $11,412.07 for 1940. The petitioner asserts that these amounts constitute distributive shares of the net income of a partnership (Woosley Knitting Mills) belonging to his wife and to trusts for his two minor children, and in addition to disputing liability for tax thereon he asserts that the respondent failed to deduct a $2,400 salary paid to his wife, in computing the amount of the partnership profits. (2) $462.75 for 1938, $523.25 for 1939, and $549.19 for 1940. These amounts are rentals derived from the Eureka Building which, the petitioner asserts, are properly taxable to the above-mentioned trusts and not to him. (3) $253.51 for 1940, net rentals derived from the *22 Whiteside Building. (4) $1,523.41 for 1939, or one-half of the gain realized on a joint stock and commodity trading account. (5) $13.50 for 1938, $344 for 1939, and $230.32 for 1940, dividends from certain stocks. (6) $577.06 for 1939, or one-half of the gain realized on a sale of shares of stock of the Allied Graphite Co. With respect to the items involved in issues (3), (4), (5), and (6), the petitioner asserts that they constitute income of his wife derived from property belonging to her. Findings of Fact During the taxable years 1938, 1939, and 1940, and up to the time of the hearing, the petitioner and his wife, Lula L. Woosley, were residents of Shelbyville, Tennessee. They made separate income tax returns for the years 1938 and 1940 and filed them with the collector of internal revenue for the district of Tennessee. (1) Partnership Income. The petitioner and Lula L. Woosley were married in 1926. They have two minor children, William Bryant Woosley, Jr., born June 7, 1929, and Harry Lee Woosley II, born February 8, 1935. The petitioner has been engaged in the manufacture of women's hosiery since 1927. The business, which has at all times been carried on in Shelbyville *23 under the name of Woosley Knitting Mills, was first conducted by the petitioner in partnership with his father. When his father died in 1935 the petitioner continued operation of the business as a sole proprietor until 1937, and since the beginning of 1937 the business has been carried on as a partnership, under written partnership agreements of January 2, 1937, May 26, 1937, and December 30, 1939, which are hereinafter set forth. After his marriage in 1926 the petitioner spent a year working in hosiery mills in Pennsylvania and Kentucky in order to obtain knowledge of methods of manufacturing women's hose. His wife was with him during this time. In 1927 he returned to Shelbyville and started in business with his father as a partner. During the first few years he and his father operated the mill on a small scale and the mill office was open for business about one-half of the time of each working day. The petitioner attended to all of the office work with the aid of his wife, who regularly kept records of the stock and of the piecework production and made up payrolls. She also spent part of her time in the mill instructing women employees in methods of examining the gray, or unfinished, *24 stockings, and the dyed, or finished, stockings. In 1929 the mill employed Robert M. Thomas and Hans Roessler. Thomas was a personal friend of the Woosleys and had previously worked in a bank and in a broker's office. After working in the mill for a year, Thomas was put out on the road as a salesman until 1935, when he returned to Shelbyville to take charge of the sales work and bookkeeping. Roessler was a skilled mechanic and was employed as superintendent of the knitting room. He also exercised supervision over the machinery and other equipment of the mill. In 1932 the mill was moved to a new and larger building and a clerk was hired to assist Mrs. Woosley with the payroll and other clerical work. In the taxable years 1938, 1939, and 1940 the employees of the mill numbered from 125 to 130. In the latter part of 1935 Thomas and Roessler proposed the formation of a partnership, and the petitioner promised to do so later "when the firm got out of debt". Thereafter, throughout the year 1936, the petitioner and his wife frequently conferred with Thomas and Roessler concerning the proposed partnership and the interest which each partner was to have in the business. They at all times *25 contemplated that Mrs. Woosley and the two Woosley children should be included as members of the partnership. In taking Mrs. Woosley in as a partner petitioner considered the fact that she had worked for the business from 1926 to 1935 without pay. On January 2, 1937, the petitioner drew up the following agreement in longhand which was signed by him, Thomas, Roessler, L. L. Woosley, and "L. L. Woosley - trustee", on that date: We the undersigned do this day agree to form a partnership to be known & operated as Woosley Knitting Mills. The undersigned W. B. Woosley agrees to put in all the assets and liabilities of the individually owned business of W. B. Woosley known as Woosley Knitting Mills and his interest in the partnership is to be 119/150. The undersigned L. L. Woosley agrees to put in $8887.50 money which Woosley Knitting Mills now has borrowed from her and W. B. Woosley agrees to give her $5000.00 interest and the balance of $112.50, making a total of $14000.00, is to be deducted from her salary for 1937, her interest in the partnership is to be 14/150. The undersigned L. L. Woosley Trustee for W. B. Woosley Jr. and H. L. Woosley II has an interest in the partnership of *26 1/150 for W. B. Woosley Jr. and 1/150 interest for H. L. Woosley II for $1000.00 interest given each of them by W. B. Woosley. The undersigned R. M. Thomas agrees to put in $5000.00 cash for which he shall have an interest in the partnership of 5/150. The undersigned Hans Roessler agrees to put in $15000.00 for which he shall receive a 10/150 interest in the partnership. The above parties shall share in all the profits & losses of the partnership according to their respective interests. This agreement sets out the conditions on which the articles of partnership are to be drawn up and is agreed to by all of the undersigned. The assets and liabilities of the petitioner on December 31, 1936, exclusive of real estate and mill building, as reflected by his ledger accounts as of that date, were as follows: *03ASSETS
Accounts Receivable
$34,626.83
Less: Inactive Accounts
13,934.13
20,692.70
Less: Bad Accounts charged
off prior years
1,458.99
19,233.71
Hamilton National Bank - Chattanooga
10,148.56
Machinery and Equipment
117,012.83
Inventories
55,563.26
$201,958.36
LIABILITIES AND NET WORTH
Accounts Payable
$ 544.74
Peoples National Bank - Shelbyville -
O.D.
713.91
Reserve for Depreciation
59,520.13
W. B. Woosley - Net Worth
141,179.58
$201,958.36
*27 The foregoing assets and liabilities were also reflected on an account on the ledger entitled "W. B. Woosley - Net Worth", as having a net value of $141,179.58. On January 2, 1937, the petitioner personally assumed the outstanding accounts payable of $544.74, which amount was credited to his net worth account, increasing the credit balance therein to $141,724.32; and the assets of the business other than the real estate and mill building were turned over to the partnership. Thomas and Roessler executed their unsecured promissory notes, in the amounts of $5,000 and $15,000, respectively, for their capital contributions. Under date of January 2, 1937, a "partnership investment" account and separate accounts in the names of each of the individual partners other than the petitioner were set up on the ledger, and the accounts of such partners were charged, and the "partnership investment" account was credited with their capital contributions as follows: Lula L. Woosley
$14,000
Lula L. Woosley, Trustee for W. B.
Woosley, Jr.
1,000
Lula L. Woosley, Trustee for H. L.
Woosley II
1,000
Robert M. Thomas
5,000
Hans Roessler
15,000
$36,000
Under date of January 2, 1937, the *28 net worth account of the petitioner was charged with the amount of $8,887.50 as a "debt owed Lula L. Woosley by W. B. Woosley", and with the amounts of $5,000 as a gift to Lula L. Woosley, $1,000 as a gift to W. B. Woosley, Jr., and $1,000 as a gift to H. L. Woosley II; and those amounts were credited to the individual accounts of Mrs. Woosley and the two trusts. The balance of $125,836.82 remaining in the petitioner's net worth account was credited to the "partnership investment" account. The balance sheet then disclosed assets and liabilities and net worth of the respective partners, as of January 2, 1937, as follows: ASSETS
Accounts Receivable
$34,626.83
Less - Inactive Accounts
13,934.13
20,692.70
Less - Bad Accounts charged
off prior years
1,458.99
19,233.71
Hamilton National Bank of Chatta-
nooga
10,148.56
Machinery & Equipment
117,012.83
Inventories
55,563.26
Lula Woosley
112.50
Hans Roessler
15,000.00
Robert M. Thomas
5,000.00
Total Assets
$222,070.86
LIABILITIES AND NET NORTH
Accounts Payable
0
Peoples National Bank, Shelbyville,
O.D.
713.91
Reserve for Depreciation
59,520.13
PARTNERSHIP INVESTMENT
W. B. Woosley
125,836.82
Lula L. Woosley
14,000.00
Lula L. Woosley - Trustee for H. L.
W. II
1,000.00
Lula L. Woosley - Trustee for W. B.
W. Jr.
1,000.00
Hans Roessler
15,000.00
Robert M. Thomas
5,000.00
Total Liabilities and Net Worth
$222,070.86
*29 On May 2, 1937, the petitioner, as trustor, and Lula L. Woosley, as trustee, executed two identical trust agreements, one for the use and benefit of William Bryant Woosley, Jr., and the other for the use and benefit of Harry Lee Woosley II. Each trust instrument stated: That petitioner on January 2, 1937 had transferred to the trustee $1,000 to invest in the partnership of Woosley Knitting Mills; that the trust fund should be held for the use and benefit of the beneficiary; that the trustee had full powers of management, sale, and reinvestment; that the income should be accumulated until the beneficiary attained the age of 21; that thereafter and before the beneficiary reached the age of 30 the trustee in her discretion might pay the corpus and accumulations to the beneficiary; that if she did not deem it advisable to so pay the corpus and accumulations she could hold same until the beneficiary attained the age of 30 years, in the meantime having the power to pay so much of the net income therefrom as in her discretion was deemed advisable for the maintenance, support, and education of such beneficiary including the maintenance of a home; that when the beneficiary attained the age *30 of 30 the trustee should pay the beneficiary the trust fund as it then existed; that the trustee had full authority to encroach upon the corpus whenever in her discretion it might be desirable to do so for the purpose of supporting, educating, or assisting the beneficiary "for whom, for the time being the income from the fund is being used"; and that in the case of the death, disability, or refusal of the trustee, or any successor trustee, the grantor could appoint a successor trustee, the grantor could appoint a successor trustee or trustees. The trusts were irrevocable. On May 26, 1937, the petitioner, Thomas, Lula L. Woosley, Roessler, Lula L. Woosley, as trustee for William Bryant Woosley, Jr., and Lula L. Woosley, as trustee for Harry Lee Woosley II, signed an "AGREEMENT OF PARTNERSHIP" which, after reciting that it amplified and superseded the partnership agreement of January 2, 1937, provided, inter alia, as follows: 1. The partnership shall be for the carrying on of the business of manufacturing and selling hosiery and other textile products and such other business as may be agreed upon by the partners under the firm name of "WOOSLEY KNITTING MILLS", and said firm shall, *31 as of January 2, 1937, take over and succeed to all of the properties, assets and rights of the Woosley Knitting Mills (excepting real estate and excepting the sum of Fifteen Thousand Eight Hundred Eighty-seven Dollars and Fifty Cents ($15,887.50), heretofore operated as an individual proprietorship by the said W. BRYANT WOOSLEY in Shelbyville, Tennessee and shall continue the business of the said Woosley Knitting Mills which has heretofore been operated as such individual proprietorship; it being understood, however, that the said properties, assets and rights of Woosley Knitting Mills which are so taken over by this partnership are taken subject to all accrued liabilities of the said Woosley Knitting Mills at said date. 2. The partnership shall begin on January 2, 1937 and shall continue until dissolved by an act or acts of one or more of the parties hereto or by operation of law. 3. (a) The capital of the partnership shall consist of the sum of Thirty-six Thousand Dollars ($36,000.00); Five Thousand Dollars ($5,000.00) of which has or shall be contributed in money by the said ROBERT M. THOMAS; Fourteen Thousand Dollars ($14,000.00) of which has or shall be contributed in money *32 or property by the said LULA L. WOOSLEY; Fifteen Thousand Dollars ($15,000.00) of which has or shall be contributed in money by the said HANS ROESSLER; One Thousand Dollars ($1,000.00) of which has or shall be contributed in money or property by LULA L. WOOSLEY, TRUSTEE for Harry Lee Woosley, II; and One Thousand Dollars ($1,000.00) of which has or shall be contributed in money or property by the said LULA L. WOOSLEY, TRUSTEE for William Bryant Woosley, Jr.; and the plant properties and other assets (excepting real estate and excepting the sum of $15,887.50) now owned and used by the said W. BRYANT WOOSLEY in connection with his operation of the Woosley Knitting Mills, including (with the above exception) all cash on hand and in bank, accounts and notes receivable, inventories of raw materials, work in process, finished goods, supplies, all machinery, equipment, furniture, fixtures, trademarks, tradenames, choses in action, and all other assets both tangible and intangible, so owned and used by the said W. BRYANT WOOSLEY as of January 2, 1937, all of which have or shall be contributed by the said W. BRYANT WOOSLEY. (b) It is agreed that the said partnership business may during the *33 life of this agreement occupy and use the real estate and plant buildings of Woosley Knitting Mills which are owned by W. BRYANT WOOSLEY, located within the Corporate Limits of the Town of Shelbyville, described as follows: * * *
upon the condition that the partnership business shall pay annually to W. BRYANT WOOSLEY the amount of all taxes and assessments on said property including the property taxes for 1937, keep the buildings in good repair, pay for all insurance, upkeep and maintenance on said property and pay the said W. BRYANT WOOSLEY an amount each year equal to the annual depreciation charges on the buildings on said property as allowed by the U.S. Treasury Department for income tax computations. 4. Each of the parties hereto shall diligently employ himself or herself in the business of said partnership, and be faithful to the others in all transactions relating to the firm, and give, whenever required, a true accounting of all business transactions arising out of, or connected with, the conducting of the partnership, and no one of the partners excepting a partner holding a majority interest in said firm, shall engage in any business except that of said partnership *34 or upon account thereof without the consent in writing of the other partners. * * *
6. The respective interests of said parties in this partnership shall be as follows: W. BRYANT WOOSLEY One Hundred Nineteen One Hundred Fiftieths (119/150); ROBERT M. THOMAS One-thirtieth (1/30); LULA L. WOOSLEY Fourteen One Hundred Fiftieths (14/150); HANS ROESSLER One-fifteenth (1/15); LULA L. WOOSLEY, TRUSTEE for Harry Lee Woosley, II One One Hundred Fiftieth (1/150); LULA L. WOOSLEY, TRUSTEE for William Bryant Woosley, Jr. One One Hundred Fiftieth (1/150). 7. The partners shall from and after January 2, 1937 share in all profits and losses that may arise out of, or occur in, the prosecution of said partnership operations, each in proportion to his or her aforesaid interest in the partnership; provided, however, that in determining annual amounts of profits or losses to be apportioned to the respective partners the amounts to be so apportioned shall be the annual profits or losses resulting from the partnership operations after the salaries to the respective partners, as hereinafter provided for, have been deducted from the income of the partnership. * * * *35 9. The said W. BRYANT WOOSLEY shall be manager and executive head of said business and shall be allowed as salary for his services the annual sum of * * * $7,200. The said ROBERT M. THOMAS shall be allowed as salary for his services the annual sum of * * * $2,400. The said LULA L. WOOSLEY shall be allowed as salary for her services the annual sum of * * * $2,400. The said HANS ROESSLER shall be allowed as salary for his services the annual sum of * * * $5,720. The aforesaid salary allowances shall be * * * charged against the income of the partnership operations before any apportionment of annual profits or losses is made; and said salary allowances may be changed from time to time by agreement of a majority of the partners. * * *
In June 1937 the petitioner introduced Thomas and Roessler at the Hamilton National Bank, in Chattanooga, where he negotiated loans by the bank of $5,000 to Thomas and $15,000 to Roessler, on promissory notes signed by them and guaranteed by the petitioner. Thomas and Roessler turned the proceeds of these loans over to the partnership in payment of the notes previously given by them for their capital contributions. On June 30, 1937, their individual *36 accounts on the ledger were credited with the amounts so paid. In 1939 the petitioner, his wife, and Thomas became dissatisfied with the conduct and services of Roessler and the petitioner finally induced Roessler to retire from the partnership. On December 30, 1939, the petitioner paid Roessler $21,667 in cash for his undivided one-fifteenth interest in the business. Throughout the taxable years, the partners, other than Thomas, received the salaries specified in the partnership agreement, and Thomas received a salary of $5,400 per annum, under the provision of the partnership agreement that "said salary allowances may be changed from time to time by agreement of a majority of the partners" On December 30, 1939, the petitioner sold to his wife an undivided 50/150th interest in the business, for which she delivered her promissory note in the sum of $60,000, payable on or before 10 years from date and secured by a 64/150ths interest in the business. The note bears the following statement on the reverse side: This note is given for purchase money for a 50/150 partnership interest in Woosley Knitting Mills, a partnership of Shelbyville, Tennessee, which interest was acquired by *37 W. Bryant Woosley under Partnership Agreement of 26th day of May, 1937, which 50/150 interest is hereby transferred by W. Bryant Woosley to Lula L. Woosley. It is understood that this note may be paid in installments of not less than $100.00 each at any time before maturity. On December 30, 1939, the petitioner, Thomas, and Lula L. Woosley, the latter acting individually and as trustee, signed an agreement reading in part as follows: WHEREAS the aforesaid parties did on the 26th day of May, 1937, enter into an Agreement of Partnership for the conduct of the business of "Woosley Knitting Mills" of Shelbyville, Tennessee, to which Agreement of Partnership one Hans Roessler was a party; and the said Hans Roessler having this day disposed of his entire interest in said partnership to W. Bryant Woosley; and the said Lula L. Woosley having this day acquired from the said W. Bryant Woosley a * * * (50/150) interest in said firm, said 50/150 interest being from the * * * (119/150) interest originally acquired by the said W. Bryant Woosley under said Partnership Agreement of the 26th day of May, 1937; now, therefore, it is agreed among and between the parties hereto that said Partnership *38 Agreement shall be amended in the following particulars, to-wit: 1. Notwithstanding anything in said Partnership Agreement contained, the said Hans Roessler shall no longer be a partner in this firm, nor in anywise be employed by it, nor draw any salary or other compensation therefrom. 2. Sub-section Six (6) thereof is hereby amended to read as follows: "6. The respective interests of said parties in this partnership shall be as follows: W. BRYANT WOOSLEY Seventy-nine One Hundred Fiftieths (79/150); ROBERT M. THOMAS One-thirtieth (1/30); LULA L. WOOSLEY Sixty-four One Hundred Fiftieths (64/150); LULA L. WOOSLEY, TRUSTEE for Harry Lee Woosley, II One One Hundred Fiftieth (1/150); LULA L. WOOSLEY, TRUSTEE for William Bryant Woosley, Jr. One One Hundred Fiftieth (1/150)." 3. The said Agreement of Partnership is in all respects continued and confirmed excepting as the same may be modified or amended by the foregoing. When the above agreement of December 30, 1939 was signed, no entries were made in the "partnership investment" account or in the accounts of the individual partners to reflect the change made at that time in the interests of the partners in the *39 business. At various times during 1937, 1938, and 1939, the partnership issued checks to Mrs. Woosley as payments on the demand notes issued to her for her salary. The checks, in denominations of $200, $100, and $50 wre deposited in her personal checking account. The total amount of such checks deposited in each year was $1,500 in 1937, $2,300 in 1938, and $1,200 in 1939. In those years and in 1940, Mrs. Woosley deposited in her personal checking account rentals of the Eureka Building, dividend checks, and $254.50 of the rentals of the Whiteside Building for 1940, as more fully stated under issues (2), (3), and (5), infra. She drew upon that account to pay household expenses of the Woosley family, and, at the end of each year the petitioner, after verifying the amount so expended from her check stubs, gave her his demand note for the total expended by her during the year. On December 30, 1939, Mrs. Woosley held three notes of the petitioner, payable to her on demand, in the amounts of $5,000, $5,000, and $4,000, which had been given to her by the petitioner as "Christmas presents" in December of 1937, 1938, and 1939; and three demand notes in the amounts of $1,350, $2,125, and *40 $1,965, which had been given to her by the petitioner to reimburse her for amounts which she had expended in the respective years for household expenses. On December 30, 1939, she surrendered the six notes to the petitioner and they were credited as payments on her note for $60,000. During 1940 Mrs. Woosley made payments on the latter note, consisting of checks for $570 which she had received as rent from the Whiteside Building and a check for $3,900 drawn on her personal checking account to the order of the petitioner, dated December 17, 1940. On September 17, 1940, the balance in her checking account was $41.37, and on September 18, 1940, she deposited in that account $4,000 received as a gift from the petitioner. Between September 17, 1940 and the drawing of the check for $3,900 on December 17, 1940, she made deposits totaling $316, consisting of rents received from the Whiteside Building, the Eureka Building, and dividends on certain stocks. No entries were made in the individual ledger accounts of the partners crediting them with their shares of the annual partnership profits during the years 1937 to 1940; nor were such profits credited to any drawing account. At the end of *41 each year Thomas merely went over the books and prepared a statement for each partner showing his share of the profit and his interest in the business. Distribution of profits by the partnership was not made at regular intervals or on an annual basis. The first distribution was made on December 31, 1940. This and all subsequent distributions were made in the form of promissory notes of the Woosley Knitting Mills, in the amount of their respective shares, payable to each of the partners on demand. The partnership made payments on the notes as and when requested by the holders. In the distribution of profits made on December 31, 1940 Mrs. Woosley, individually, received a demand note of Woosley Knitting Mills for $10,880, and two demand notes for $170 each, payable to her as trustee for W. B. Woosley, Jr. and H. L. Woosley II. She endorsed the note for $10,880 to the petitioner, and $3,400 of that amount was applied in repayment of a cash advance made to her on February 3, 1939 by the Woosley Knitting Mills, and the balance of $7,480 was credited as a payment on her $60,000 note to the petitioner. On December 31, 1940, Mrs. Woosley received a demand note of Woosley Knitting Mills on *42 the amount of $2,400 on account of her salary for 1940, and, on the same day, she endorsed the note to the petitioner and he credited that amount on her $60,000 note. On December 31, 1940, the petitioner gave Mrs. Woosley his note for $980, payable to her on demand, to reimburse her for amounts expended in 1940 for household expenses. She endorsed the note to the petitioner on the same day, and the petitioner marked it "paid" and credited the $980 on her $60,000 note. Mrs. Woosley borrowed from the petitioner $15,300, which she used to purchase the Whiteside Building, hereinafter referred to under issue (3); and she also borrowed from petitioner $2,780 which she used to purchase a house on Hobson Avenue, in Shelbyville, as an investment. For these loans she gave the petitioner her promissory notes, one for $15,300, dated March 30, 1940, and the other for $2,780, dated May 1, 1941. On September 1, 1941, the Woosley Knitting Mills made a distribution of profits in the form of demand promissory notes payable to each of the partners, in which distribution Mrs. Woosley received the note of the Woosley Knitting Mills, dated September 1, 1941, for $38,400. She endorsed this note to the *43 petitioner, and, on September 1, 1941, the petitioner credited her with payments on her notes then held by him as follows: Amount
Amount
Credited
Date of Note
of Note
on Sept.
1. 1941
December 30, 1939
$60,000
$25,230.00
Principal
1,759.73
Interest
March 30, 1940
15,300
8,630.27
Principal
May 1, 1941
2,780
2,780.00
Principal
The portion of the profits of the partnership of the year 1941 payable to Mrs. Woosley on her 64/150ths interest was $37,556.42. The note of December 30, 1939 for $60,000 was marked canceled and paid in full as of September 1, 1941. The petitioner reported the item of interest in the amount of $1,759.73 as income in his return for 1941. The demand notes of the Woosley Knitting Mills for $2,400 and $10,880, payable to Mrs. Woosley, and which had been endorsed to the petitioner, were paid by it on March 13, 1941; and the demand note for $38,400, payable to her and which had been endorsed to the petitioner, was paid by it in 1942 in four installments. Since 1931 and up to and including the taxable years, Mrs. Woosley has regularly supervised the preparation of the payrolls of the Woosley Knitting Mills, has signed *44 all payroll checks, and has worked in the stock room directing the grading, folding, packing, and labeling of hose. She received no compensation for her services prior to the formation of the partnership, but during each of the years 1937 to 1940 she received the salary of $2,400 per annum authorized by the partnership agreement. Since the formation of the partnership on January 2, 1937, Mrs. Woosley has been active in the conduct of its business. In addition to supervising payrolls and working in the stock room she has transacted business for the partnership at the banks. She had authority to, and did, sign checks of the partnership for payrolls and for current expenses of the business. She at all times participated in conferences between the partners involving the policy to be pursued by the business and other important business matters, including personnel problems and purchases of machinery and equipment. She participated in the discussions relating to the retirement of Roessler from the partnership and the continuation of the partnership by the other partners. When the petitioner and Thomas were absent, she directed the operation of the business. Both before, as well as after *45 January 2, 1937, she had, the responsibility of "styling" hose. This "styling" involved the making of changes in the shape of the sole and various changes in other parts of the stocking, the selection of appropriate colors, and the determination of the quality of hose to be manufactured, all of which is necessary in the hosiery manufacturing business to keep the product in line with changing fashions in women's shoes and clothing. The petitioner and Thomas relied upon her judgment and experience in styling. When the business was first started, Mrs. Woosley's duties did not take up all of her time. She usually spent about half of her time at the office and plant, but, as the business expanded, her duties gradually consumed more and more of her time. During the taxable years she did not report at the opening hour with the other partners, but she went to the office regularly every day and actively engaged in the performance of her duties. She was absent for the entire day on but few occasions. The services performed and the responsibilities assumed by Mrs. Woosley during the years 1937 to 1940 were reasonably worth the annual salary of $2,400 which she received from the partnership in *46 those years. Ever since the creation of the trusts for W. Bryant Woosley, Jr. and Henry Lee Woosley II on May 2, 1937, Mrs. Woosley has acted as trustee of the trusts. She did not maintain bank accounts for the trusts in her name as trustee until July 1942. Prior to that time, moneys received by her as trustee were deposited by her in her personal checking account. As of December 31, 1941 she was indebted to each trust for rents collected from the Eureka Building, after payment of taxes and repairs, in the amount of $789.29, and held a claim for each trust for rent due from the estate of the petitioner's father, H. L. Woosley, in the amount of $238. She did not use any of the income of the trusts for the taxable years for the education, support, or maintenance of the beneficiaries named therein. As trustee, Mrs. Woosley has reported 1/150th of the net income of the partnership in returns filed for each of the trusts for the years 1938, 1939, and 1940. In her separate individual income tax returns for the taxable years 1938 and 1939 she reported, as her distributive share of the earnings of the partnership, 14/150ths of the net income of the 1938, 1939, and 1940. In her separate *47 individual income tax returns for the taxable years 1938 and 1939 she reported, as her distributive share of the earnings of the partnership, 14/150ths of the net income of the business after deduction of the salaries paid to the several partners; and in her return for the taxable year 1940 she reported 64/150ths of such net income. In determining the deficiencies, the respondent computed the distributive income of the partnership, the share of such income includable in the petitioner's returns, and the total income from the business includable therein as follows: 1938
1939
1940
Income of partnership after deduction for partners' salaries
which has been accepted as being correct
$20,262.83
$28,692.26
$20,664.03
Add - Salary of Lula L. Woosley which has been held to be
not deductible
2,400.00
2,400.00
2,400.00
Distributive income as corrected
$22,662.83
$31,092.26
$23,064.03
Share of distributive income includable in your return,
135/150ths of $22,662.82
20,396.54
135/150ths of $31,092.26
27,983.03
145/150ths of $23,064.03
22,295.23
Salary received, deducted in computing distributive income
7,200.00
7,200.00
7,200.00
Total includable in your return
$27,596.54
$35,183.03
$29,495.23
Amount reported
20,967.11
29,447.54
17,465.26
Additional income
$ 6,629.43
$ 5,735.50
$12,029.97
The share of distributive income includable in your return
includes the shares attributed by you to yourself
119/150
119/150
79/150
Lula L. Woosley - your wife
14/150
14/150
64/150
Trust created by you for -
W. Bryant Woosley, Jr.
1/150
1/150
1/150
Harry Lee Woosley, II
1/150
1/150
1/150
Total
135/150
135/150
145/150
*48 (2) Eureka Building Rentals. On September 8, 1937, the petitioner and Lillian M. Tilford purchased real estate in Shelbyville. The property was improved by a building, known as the Eureka Building, which was rented for business purposes. They paid $12,500 in cash for the property and each acquired an equal interest therein. The petitioner purchased the interest in the property, at the suggestion of Mrs. Woosley, as an investment for the two trusts created for the Woosley children. On September 22, 1937, in accordance with an understanding had with Mrs. Woosley when he purchased the property, he conveyed his undivided one-half interest therein to "Lula L. Woosley, as trustee for W. B. Woosley, Jr., and H. L. Woosley II," and Mrs. Woosley, as trustee, gave the petitioner a promissory note for $6,250, payable five years after date. The note bore interest from maturity and was marked "vendor's lien retained." The share of the rent from the building belonging to the trusts amounted to $150 in 1937, $600 in 1938, $668 in 1939, and $804 in 1940. Mrs. Woosley, as trustee, collected all of the 1937 and 1938 rent, $600 of the 1939 and $396 of the 1940 rent, which she deposited in her personal *49 checking account. She paid the 1938 and 1939 taxes and certain repairs, and at the close of 1940 she owed the two trusts $1,578.58. She also collected $476 additional rents from the estate of H. L. Woosley for 1939 and 1940 and paid that amount on the note for $6,250 on January 2, 1941. On March 13, 1941, the two demand notes of the partnership for $170 each, issued to her as trustee in the distribution of profits of December 31, 1940, were paid by the partnership and she endorsed the checks to the petitioner for credit on the note for $6,250. In January, June, and December of 1943, Mrs. Woosley, as trustee, received further credits for payments on the $6,250 note totalling $4,834, and, on February 10, 1944, she received credit for a final payment of $600, and the note was marked paid. The sources from which the payments of $4,834 and $600 were made are not shown by the record. The total profits of the partnership attributable to the two trusts for the years 1937 to 1940, inclusive (less the $170 to each trust paid by the partnership on March 13, 1941) was $574.94. In determining the deficiency the respondent held that the net income from the rents of the Eureka Building less depreciation *50 allowances in the amounts of $462.75 for 1938, $523.25 for 1939, and $549.19 for 1940, which had been reported on returns filed by Lula L. Woosley, as trustee of the trusts created for W. B. Woosley, Jr. and H. L. Woosley II, was taxable to the petitioner. (3) Whiteside Building Rentals. On March 30, 1940, Mrs. Woosley acquired by deed from Ida Camp Cunningham and Claude N. Cunningham real estate in Shelbyville. The property was improved by a business building known as the Whiteside Building. Mrs. Woosley paid $17,000 in cash for the property, $15,300 of which she borrowed from the petitioner, $1,200 of which she received from Woosley Knitting Mills on her salary note, and $500 of which she paid out of the then existing balance of $557.61 in her personal checking account. She gave the petitioner her promissory note for $15,300, dated March 30, 1940, payable in installments over a period of ten years and bearing interest after maturity. On September 1, 1941, when Mrs. Woosley received the demand note of the Woosley Knitting Mills for $38,400 for her share of the partnership profits and endorsed it to the petitioner, as shown under issue (1), $8,630.27 thereof was credited on her note *51 for $15,300. At the time of the hearing the balance remaining due on the latter note was $6,669.73. The gross rentals from the Whiteside Building amounted to $824.50 for the year 1940 and were collected by Mrs. Woosley. Of that amount, she paid $570 on her note for $60,000, referred to in issue (1), and she deposited the balance of $254.50 in her personal checking account. During the year 1940 Mrs. Woosley received net income from rentals of the Whiteside Building in the amount of $253.51, which she reported in her separate income tax return. In determining the deficiency the respondent held that such net income was taxable to the petitioner. (4) Stock and Commodity Trading Accounts. In January 1939 the petitioner had a stock trading account with Courts & Co., a firm of brokers of Atlanta, Georgia. Through this account he purchased 100 shares of General Motors stock on January 17, 1939, for $4,617.21, and 100 shares of Chrysler stock on January 31, 1939, for $6,794. The petitioner sold the 100 shares of Chrysler stock on February 8, 1939, for $7,588.09, and, on that day, he closed out the account and opened a joint trading account with Courts & Co. in the name of himself and *52 Lula L. Woosley, to which the proceeds of $7,588.09 in the old account were transferred at his direction. During the year 1939 he opened a joint commodity trading account with Courts & Co. in the name of himself and Lula L. Woosley with funds transferred from the joint stock trading account. Purchases and sales were made through the joint stock and commodity trading accounts at various times during the year 1939. The 100 shares of General Motors stock which the petitioner had purchased on January 17, 1939, for $4,617.21, were sold through the joint stock account on August 1, 1939. During 1939 the petitioner received dividends on the stock held in the joint stock trading account in the total amount of $700. A gain of $3,046.82 was realized on the sales of stocks and commodities made through the joint accounts. In December 1939 both of the joint accounts were closed out, the long stocks held in the stock account were drawn out, and the proceeds standing to the credit of the petitioner and his wife, $4,207.87 in the stock account, and $1,268.75 in the commodity account, were paid to the petitioner by Courts & Co. Certificates for the shares of stock drawn out were issued in the names *53 of "W. Bryant Woosley and Mrs. Lula L. Woosley," or "W. Bryant Woosley and Mrs. Lula L. Woosley, as tenants in common" and those shares have since been so held. The petitioner paid $2,103.43, or one-half of the proceeds of the joint stock account, and $634.38, or one-half of the proceeds of the joint commodity account, to Mrs. Woosley, on December 9, 1939. He retained $700the of dividends, but in a settlement of accounts between them he credited her with one-half of that amount. When the petitioner purchased the 100 shares of General Motors stock through his individual account on January 17, 1939, Mrs. Woosley issued her check to Courts & Co. for $2,308.50, and the petitioner paid the same amount to the brokers. The balance in Mrs. Woosley's checking account on January 16, 1939 was $92.15. At the time of issuing her check for $2,308.50 on January 17, 1939, Mrs. Woosley made a deposit of $2,250 consisting of $1,250 in cash which the petitioner advanced to her and $1,000 which she drew from the Woosley Knitting Mills as a payment on her salary note. When the petitioner purchased the 100 shares of Chrysler stock through his individual account on January 31, 1939, he paid Courts & Co. *54 $3,397 and, on February 3, Mrs. Woosley issued her check to Courts & Co. for $3,397. The balance in her account on February 2, 1939 was $73.13, and, on February 3, 1939, she deposited in her checking account a check of the Woosley Knitting Mills for $3,400, which she received as an advance payment from it, and which she repaid by releasing to it $3,400 of the note of December 31, 1940 for $10,880 covering her distributive share of partnership profits. In determining the deficiency the respondent held that the petitioner was taxable on the entire gain realized on the joint stock and commodity trading accounts, and he accordingly increased the petitioner's income by the amount of $1,523.41, representing one-half of the gain not reported on the petitioner's return. (5) Dividend Income. The petitioner prepared the individual income tax returns of Mrs. Woosley for the years 1938, 1939, and 1940. She reported therein the receipt of dividends as follows: No. of
Stock
Shares
1938
1939
1940
General Motors Corp.
12
13.50
9.00
33.00
Chrysler Corp.
2
10.00
8.50
Chrysler Corp.
1/2 of 300
225.00
Southeastern Greyhound Line
1/2 of 200
100.00
150.00
Youngstown Sheet & Tube Co.
1/2 of 100
50.00
Anaconda Copper
1/2 of 100
87.50
13.50
344.00
329.00
*55 In determining the deficiency the respondent increased the income of the petitioner by the amounts of $13.50 for 1938, $344 for 1939, and $230.32 for 1940. The $10 dividend on two shares of Chrysler stock was not included by the respondent as a dividend received by the petitioner in 1939, but he added $10 to the total dividends for that year on the ground that the other three dividends for 1939, listed above, were erroneously totaled on the return at $344 instead of $334. With respect to the year 1940 the respondent increased the dividend on the Youngstown stock from $50 to $75, and allowed a deduction for interest charged on the joint stock trading account in the amount of $123.68, which adjustment resulted in the inclusion in the 1940 income of the net amount of $230.32. The dividends of $13.50, $9 and $33 were received on 12 shares of General Motors stock which were acquired by Mrs. Woosley on April 20, 1938 by gift from the petitioner. The certificate for the shares, issued on that day in her name, is still held by her. The dividend of $8.50 was received on two shares of Chrysler stock which were purchased by Mrs. Woosley on February 28, 1938. The certificate for the shares, *56 issued on that day in her name, is still held by her. The remaining dividends which the respondent included in the petitioner's income for 1939 and 1940 were received on shares of Chrysler, Greyhound, Youngstown, and Anaconda stock, which shares were held in the joint stock trading account of the petitioner and Mrs. Woosley with Courts & Co. (6) Gain on Sale of Allied Graphite Stock. At various times in 1938 and 1939 the petitioner purchased 74 shares of Allied Graphite stock. The entire purchase price was paid by him. He sold the 74 shares in December 1939 and realized a profit of $1,154.13. On December 9, 1939, the petitioner paid Mrs. Woosley one-half of the proceeds of the sale, or $4,194.79. Neither the petitioner nor Mrs. Woosley reported any gain from the sale in their returns for 1939. On December 8, 1939, Mrs. Woosley had a balance of $93.94 in her checking account. On December 9, 1939, she made a deposit therein of $6,931.60 consisting of the above payment of $4,194.79 and the payments of $2,102.43 and $634.38 received by her on that date as one-half of the proceeds of the joint stock and commodity trading account, referred to under issue (4), supra. On January 5, 1940, Mrs. *57 Woosley gave the petitioner her check for $4,750. In determining the deficiency, the respondent included the entire profit of $1,154.13 in the income of the petitioner. Opinion TYSON, Judge: (1) Partnership Income. The issue, broadly stated, is: What portion of the 1938, 1939, and 1940 net income of the Woosley Knitting Mills is taxable to the petitioner? He returned 119/150ths of the net income for 1938 and 1939 and 79/150ths for 1940, computed after deducting the partners' salaries, and the principal question to be decided is whether he is also taxable on the share of his wife, or 14/150ths of the net income for 1938 and 1939 and 64/150ths for 1940, and on the share of the two trusts, or 2/150ths of the net income for 1938, 1939, and 1940. A minor question is whether the $2,400 salary paid to the petitioner's wife should be deducted from the net income of the partnership in computing the amount distributable to the partners. The answer to the principal question depends upon whether we find that the partnership relation between the petitioner and his wife and the trusts for his children was real or not from a Federal income tax viewpoint. The Supreme Court, in speaking of *58 partnerships of this type, has said that if a wife either "invests capital originating with her", or "substantially contributes to the control and management of the business, or otherwise performs vital additional services," or does all of those things, she may become a partner for Federal income tax purposes; but if she does none of them, and if the partnership interest has come to her as a gift from her husband, such circumstances may be considered in testing the reality of the partnership for Federal tax purposes. . Under this test, the status of the trusts for the Woosley children may be disposed of in a few words. The trusts were not required to render services by the terms of the partnership agreement, and they rendered none, in fact, either through Mrs. Woosley as trustee or otherwise. Their participation in the business did not go beyond contribution of an undivided interest in the assets of $1,000 each and such capital came to them through gifts which the petitioner made contemporaneously with the partnership agreement. This is not enough to create in the trusts a partnership interest which may be recognized for Federal income *59 tax purposes, and, consequently, the petitioner is taxable on the 1/150th of the net income distributable to each trust in the years 1938, 1939, and 1940. ; ; (October 11, 1946); . Cf. ; . As to the status of Mrs. Woosley individually, the respondent's view is that she also contributed no services or capital and that the arrangement with her was, in effect, an assignment by the petitioner of part of the future income from his business. He admits that she performed some service, but he insists that the character of her work and the amount of the time devoted to it indicate that her services were "decidedly unsubstantial". With regard to her capital contributions, the respondent argues that the money and property involved was all acquired from the petitioner as gifts and that the gifts were incomplete and invalid by reason of the dominion and control which he continued to exercise over the interest transferred. Concerning the salary of $2,400. *60 the respondent contends that there is no proof that the amount thereof is reasonable compensation for the services rendered by Mrs. Woosley and his action in not allowing it to be deducted as an expense of the business should be sustained. The business here involved was a manufacturing operation with a capital of $161,836.82, invested principally in machinery, equipment, and inventories, and it employed about 125 persons. The partners agreed that the petitioner, Mrs. Woosley, Thomas, and Roessler should diligently employ themselves in the business, that the petitioner should be the manager and executive head and that he should be paid $7,200 annually for his services, and that Mrs. Woosley, Thomas, and Rooessler were to be paid annual salaries of $2,400, $2,400, and $5,720, respectively. Thomas' salary was subsequently increased to $5,400. The agreement fixed the proportionate interest of each partner in the business, the interest of the petitioner being fixed at 119/150ths and that of his wife at 14/150ths. Thereafter, and on December 31, 1939, the petitioner sold a 50/150ths interest to his wife after acquiring Roessler's interest. The profits of the business were to be distributed *61 on the basis of the partners' respective interests after first deducting from the net income the salaries paid to them. The four salaried partners contributed personal services, received the salaries agreed upon, which salaries amounted to $20,720, in 1938 and 1939 and $15,000 in 1940, and divided the profits in excess of such salaries in proportion to their allotted partnership interests. The net income of the business, as determined by the respondent and without deduction of the salaries of the petitioner, Thomas, and Roessler, was $40,982.83 in 1938, $49,412.26 in 1939, and $35,664.03 in 1940, and the total salaries paid to all partners including Mrs. Woosley ($20,720 in 1938 and 1939 and $15,000 in 1940), it will be noted, amounted to approximately 50, 40, and 43 per cent of the total earnings of the respective years. It is thus evident that the business was one wherein both the services of the partners and the capital invested were factors in the production of the income. In agreeing to pay themselves salaries, in the amounts above stated, before dividing the profits, the partners intended that the profits of the business should be divided by first distributing to themselves *62 the salaries as the value of their respective services, that value not being otherwise indicated, (Cf. ; affirmed ; Ford v. Maloney, U.S. District Court, District of Oregon, June 28, 1946, Prentice Hall, Vol. 5, [*] 72,598), and then dividing any profits over the amount of such salaries on the basis of their respective partnership interests as a return on their capital investments. That the parties intended especially with reference to the salary paid Mrs. Woosley that it should represent the value of her services is clearly shown by the testimony of petitioner and Thomas to the effect that the services performed by her were fairly worth the amount of $2,400 per annum paid her, and the further testimony of petitioner that, although Mrs. Woosley often complained that such salary was not enough, it was as much as he and the other partners were willing to pay. It is thus apparent that Mrs. Woosley in receiving the $2,400 salary was fully compensated for all services performed by her for the partnership. In this view the only income involved in the issue here raised is that portion attributable to the capital contributions *63 of the partners. The question is then resolved into - What capital contribution was made by Mrs. Woosley? Mrs. Woosley's contributions to the capital stemmed from numerous sources, and as will presently appear a substantial portion of them originated in gifts of the petitioner. The validity of the gifts is of no controlling importance, for it is now well settled that the capital contribution of a wife to a partnership in so far as the Federal income tax is concerned, must originate with her and not come merely as a gift from her husband. ; ; ; The record discloses the following pertinent facts concerning the original contribution of $14,000 with which Mrs. Woosley acquired a 14/150ths interest in the business: The agreement of January 2, 1937 provided that the petitioner should put in all of the assets and liabilities of his individually owned business and that Mrs. Woosley should put in $8,887.50 in money which "Woosley Knitting Mills now has borrowed from her", together with a $5,000 interest which petitioner agreed *64 to give her and $112.50 which was to be deducted from her 1937 salary. The $5,000 interest is shown by the agreement and the testimony to be a gift and consequently did not result, for Federal income tax purposes, in creating in Mrs. Woosley any partnership interest in the business. The item of $112.50 is trivial and added nothing to capital. There is not sufficient proof that Mrs. Woosley had loaned $8,887.50 to the petitioner prior to or on January 2, 1937, or that she paid that amount of money into the partnership later. It is true that with regard to this last item the petitioner and Mrs. Woosley both testified categorically that Mr. Woosley was indebted to Mrs. Woosley in that amount, but, despite this, we are not convinced that Mrs. Woosley's capital interest in the assets to the extent of $8,887.50 was paid out of her own property or funds. She had no property or estate in 1926 when she married the petitioner at the age of 19, and she received no compensation for her services during the years 1927 to and including 1936. If the petitioner, in fact, owed her any money he did not recognize the debt as a liability in his individual assets and liabilities as shown by his ledger accounts *65 as of December 31, 1936. On cross-examination, Mrs. Woosley was asked to state the circumstances under which the debt arose, but the most she could do was to reiterate that the petitioner owed her that much money. She did not remember what the debt was for or when it was created. In view of what is revealed in the record respecting the numerous demand notes and her other financial dealings with the petitioner, all the details of which were so clear to her when she was on the witness stand, we fail to understand her lack of memory when questioned about the $8,887.50. It is also true that the petitioner testified that the interest was given to Mrs. Woosley in part for a debt of $8,887.50, and that the item is also referred to as a debt in the book entries made upon the formation of the partnership on January 2, 1937, adjusting petitioner's net worth account; but the petitioner's counsel made no effort to bring out the facts or clear up the doubt created by the cross-examination of Mrs. Woosley and by the absence of any record of the debt on the ledger accounts of petitioner reflecting his individual assets and liabilities on December 31, 1936, immediately before the formation of the *66 partnership. No facts have been presented upon which we may exercise our own judgment in the matter and the characterization of the item of $8,887.50 as a debt by the witness is not enough. In so far as we are aware, the alleged debt may have been an obligation similar to the demand notes received by her as Christmas presents. The petitioner has failed to establish to our satisfaction that any part of the capital investment of $14,000 originated with Mrs. Woosley. We therefore hold that the net income of the years 1938, 1939, and 1940 attributable to the 14/150ths partnership interest of Mrs. Woosley is taxable to the petitioner. The statement attached to the notice of deficiency shows that the respondent, in computing the distributive income of the partnership, deducted the salaries paid to the petitioner and Thomas and Roessler, and that he refused to allow the $2,400 salary of Mrs. Woosley as a deduction in the computation. Since we think that the evidence sufficiently establishes that the $2,400 constituted reasonable compensation for the services rendered by Mrs. Woosley, we hold that that amount should likewise be deducted in computing the distributive income of the partnership. *67 The remainder of Mrs. Woosley's capital contribution was made in the form of payments and credits on the $60,000 note which she gave to the petitioner on December 31, 1939, to purchase a 50/150th interest in the partnership. The payments were made out of funds derived from numerous sources - the larger portion of them representing either gifts from the petitioner or part of Mrs. Woosley's share of partnership earnings. Mrs. Woosley surrendered to the petitioner three demand notes of the petitioner in the amounts of $5,000, $5,000, and $4,000, and gave him her personal check for $3,900 on December 17, 1940. These payments, aggregating $17,900, were nothing more than gifts from the petitioner to Mrs. Woosley. The demand notes had been given to Mrs. Woosley by the petitioner as Christmas presents in December of 1937, 1938, and 1939. Those notes were merely promises of the petitioner to make a gift, and became effective as gifts of an interest in the assets when the petitioner acepted them as payments on the $60,000 note. With regard to the $3,900 check, the evidence shows that this was drawn against a balance in her personal checking account practically all of which balance had been *68 created by depositing $4,000 in cash, which Mrs. Woosley testified she had received from the petitioner as a gift. Mrs. Woosley received two demand notes of the partnership for her distributive share of partnership profits, one on December 31, 1940, for $10,880, and another on September 1, 1941, for $38,400. These notes were endorsed by her to the petitioner, and $7,480 of the former note and $25,230 of the latter note, or a total of $32,710, was credited as payment on the $60,000 note given by her to purchase the 50/150ths interest in the partship. In paying the purchase price of the 50/150ths interest to the extent of $17,900 with funds derived by gift from the petitioner, and to the extent of $32,710 with her share of the earnings of the business, as above stated, Mrs. Woosley did not contribute capital originating with her and hence acquired no standing as a partner for Federal tax purposes. Having made contributions from such sources, she is in the same position as was the wife of the taxpayer in the Lusthaus case. In that case the husband made a purported sale to his wife of a half interest in his business, and she paid part of the consideration with cash furnished by him *69 and gave her promissory notes for the balance. There was an understanding between them that the notes would be paid, and they were, in fact, paid, by the wife out of the share of the partnership profits ascribed to her under the partnership agreement. The Supreme Court, on those facts, sustained the finding of this Court that the wife was not a partner for tax purposes. It is true that in the present case there is no direct evidence of an agreement by Mrs. Woosley to pay the $60,000 note out of her share of the profits, but it is apparent that that was the purpose of the parties. Mrs. Woosley had no estate of her own and her annual earnings were only $2,400. One with such limited resources would hardly expect to discharge an interest-bearing obligation of $60,000, except out of funds realized on his partnership interest. The remaining credits on the $60,000 note totaling $9,390 were for checks received by Mrs. Woosley for rent of the Whiteside Building for the months of June to November 1940, amounting to $570, which she endorsed to the petitioner; a demand note of the partnership for $2,400 covering her salary for the year 1940; and demand notes of the petitioner in reimbursement *70 of household expenses paid by her in the amount of $6,420. As we hold that the Whiteside Building is the property of Mrs.woosley, issue (3) hereunder, and that the salary of $2,400 is reasonable compensation for Mrs. Woosley's services, there can be no doubt that the payments of $570 and $2,400 were made out of income from Mrs. Woosley's property and out of her personal earnings and constituted investments of capital originating with her. With respect to the notes for household expenses, we think the evidence places them in the same category. The household expenses were paid by Mrs. Woosley out of her bank balance derived for the most part from regular deposits of checks of the partnership in payment of her salary, and the petitioner gave her his demand notes at the end of each year for the amount so expended. The notes for the years 1937 and 1938 were for somewhat less than the total salary checks deposited during those years. The salary deposits for 1939 amounted to $1,200 and there were none in 1940, whereas, the household notes for those years were for $1,965 and $980. However, Mrs. Woosley deposited other income in amounts great enough to cover the difference and the record shows *71 such other income belonged to her, except a small amount belonging to the trust which she had commingled with her own funds and for which, of course, she was liable to the trust. In a recent case wherein we could not find the necessary reality in a partnership between a husband and wife, but the proof, as is the case here, showed that the wife actually invested some capital of her own, we held that the earnings of the business which were attributable to capital invested should not be taxed in its entirety to the husband, but should be apportioned between the husband and wife on the basis of their respective capital contributions. As the evidence shows that $9,390 of the amount paid to purchase a 50/150ths interest in the partnership was paid from Mrs. Woosley's earnings and from income from property belonging to her and the trusts, we think the same principle should be applied here in determining the tax liability of petitioner for the year 1940, since the payments on the $60,000 originated, to the extent of $9,390, from her personal earnings or income from her own property. However, for the reasons which we have heretofore stated, it is not *72 necessary to allocate the partnership income between income attributable to service and income attributable to capital, as was done in the Canfield case. The income with which we are here concerned is all attributable to capital, and, on the facts, there is a more definite method of allocating such income than the method adopted in that case. The partnership interest of 50/150ths was acquired by Mrs. Woosley for $60,000 or at a cost of $1,200 for each unit of 1/150th. On the basis of such cost Mrs. Woosley's own funds of $9,390 were sufficient to purchase 7.825 of the 50 units. We therefore hold that of the partnership profits of 1940 which are attributable to the 50/150ths interest, 7.825 parts thereof are taxable to Mrs. Woosley and the remaining 42.175 parts are taxable to the petitioner. (2) Eureka Building Rentals. The respondent has included the net rentals from the Eureka Building in the income of the petitioner for the years 1938, 1939, and 1940. A half interest in the building was purchased by the petitioner for $6,250 and conveyed to Mrs. Woosley as trustee under the trusts for the Woosley children, and in consideration of such conveyance Mrs. Woosley, as trustee, executed *73 a note for that amount, payable to the petitioner in five years. The evidence shows that Mrs. Woosley owed the trusts $1,578.58 of the rents collected up to 1941, and that in 1941, $476 of those rents not commingled with her personal funds and $340 of the partnership profits paid to the trusts were paid on the $6,250 note. She made further payments on the note of $4,834 in 1943 and $600 in 1944, but the evidence does not show the source from which those amounts were derived. The petitioner contends that the trustee paid for the property with rentals from the building and amounts which the trusts received as distributive shares of the profits of the partnership of Woosley Knitting Mills, and the income therefrom should not be taxed to him because he did not own the property and the income was not received by him or under his control and was not used to meet his legal obligation to support the beneficiaries. The respondent does not seek to tax the income to the petitioner on the ground that he, as grantor of the trusts, retained command over the property or the enjoyment of its economic benefits under the principle of , and hence we do *74 not consider that question. His position is that the funds used to purchase the building stemmed from the petitioner, and, despite the fact that legal title was placed in the trustee, the equitable title remained in him and the rents received from the building "amounted only to an assignment of future income within the rule of Earl v. Lucas", , and other cases. We are unable to agree with the respondent that the trustee held the legal title under a resulting trust in favor of the petitioner. The petitioner paid the original purchase price out of his own funds, it is true; but he took the title in his own name, and then he conveyed his interest to Lula L. Woosley, trustee. The evidence shows that the petitioner purchased the property with the intention of acquiring an investment for the trusts, and the conveyance by him to the trustee was made to carry out such intention. The fact that the petitioner took a note with a vendor's lien for the money he had paid out is inconsistent with any presumption that the beneficial estate remained in him. The trustee collected the rents during all the years up to 1940, and applied $476 of them as payments on the note. With *75 respect to the trustee's share of partnership profits applied on the note, the fact that we have held the trusts not to be members of the partnership for income tax purposes and that their distributive shares of the profits are to be taxed to the petitioner does not justify taxing the petitioner on income from property in which the trustee invested such profits. In a somewhat similar situation, where wives of the taxpayers who were held not to be partners within the Federal income tax law purchased real estate with money received as their distributive shares of partnership profits, we said, in : We do not find reason to tax petitioners with the income from the property. The wives had received as their own, with the consent of their husbands, the money with which that property was purchased. It was, as we have held, the income of the husbands, but in substance it was given to the wives, and we may not say that property purchased therewith or the income therefrom belongs to the husbands merely because they were taxable. The greater part of the note for $6,250 was paid by the trustee during 1943 and 1944, but the record does not show that *76 these payments were made from partnership profits. The respondent suggests that, in the absence of such proof, we must assume that the payments were made from either a distribution of profits, rentals on the building, or a gift from the petitioner. That they were not made entirely from rentals is obvious, for the record shows that the building yielded, at most, $804 in gross rentals per year, while the payments on the note amounted to $5,434 during 1943 and 1944. If the payments were made from profits, they were made out of money belonging to the trusts, for the reasons stated above; and even if they were in fact gifts to the trusts from the petitioner, there would likewise be no reason for taxing the petitioner on the income. We are of the opinion that the net income from the rentals of the Eureka Building was properly returned by the trusts, and the action of the respondent in taxing that income to the petitioner is disapproved. (3) Whiteside Building Rentals. The Whiteside Building was purchased by Mrs. Woosley in her own name and paid for with $500 of her personal funds, $1,200 received as salary from the Woosley Knitting Mills, and $15,300 borrowed from the petitioner on her *77 note. $8,630.27 was paid on the latter note by Mrs. Woosley out of the distribution of partnership profits of September 1, 1941. The balance of $6,669.73 remains unpaid. The note does not mature until March 30, 1950. The same argument is made by the respondent here as was made on the issue respecting the Eureka Building; namely, that the petitioner furnished the purchase money and should be regarded as the equitable owner of the property. The payments of $500 and $1,200 were not funds of the petitioner. The first amount was made out of a balance in Mrs. Woosley's personal bank account in which she regularly deposited her salary, and the latter amount, as we have held under issue (1), was reasonable compensation for services rendered. As we have pointed out under issue (2), the fact that property was paid for in part with her distributive share of partnership profits which we have found to be taxable to the petitioner is no reason for holding that the property or the income therefrom belongs to him. She received the rents and there is nothing in the evidence to indicate that the petitioner ever had any control over the property or the income therefrom. We are of the opinion that *78 she properly returned the net rentals as her individual income in 1940, and the action of the respondent in including them in the income of the petitioner is disapproved. (4) Stock and Commodity Trading Accounts. These accounts were opened with the brokers by transfer of a credit of $7,588.09 remaining upon the closing of the petitioner's account. The credit represented the proceeds of a sale of 100 shares of Chrysler stock, which shares had been paid for in equal proportions by the petitioner and by check of Mrs. Woosley drawn on her personal checking account. Mrs. Woosley's check, in the amount of $3,397, was issued against a deposit of a check of the Woosley Knitting Mills for $3,400, which was given to her as an advance and was later repaid out of her share of partnership profits represented by the demand note of the partnership for $10,880. Besides the Chrysler stock, 100 shares of General Motors stock purchased for the petitioner's individual account were later placed in the joint account and sold. These shares likewise were paid for in equal proportions by the petitioner and by check of Mrs. Woosley. Mrs. Woosley's check, in the amount of $2,308.50, was issued against a deposit *79 of $2,250, consisting of $1,250 advanced to her by the petitioner, and a payment of $1,000 on salary by the Woosley Knitting Mills. The joint account was closed in December 1939, and on the sales made during 1939 a gain was realized in the amount of $3,046.82. Mrs. Woosley received one-half of the proceeds in the account, including one-half of the gain, or $1,523.41; and the long stocks in the account were drawn out and certificates were issued in the joint names of the petitioner and Mrs. Woosley. The petitioner reported one-half of the gain of $3,046.82 and the respondent increased his income by adding thereto $1,523.41 reported by Mrs. Woosley as her share of the gain. The respondent contends that the joint account belonged to the petitioner, individually; that the so-called contributions of Mrs. Woosley to the purchase price of the Chrysler and General Motors stock originated with him and were obtained by him for the most part in the operation of the Woosley Knitting Mills; and that his transfer of part of the gain to Mrs. Woosley was nothing more than assignment of "future" income. The contention is predicated upon the premise that the partnership was invalid, and it is said *80 that the contributions of Mrs. Woosley to the joint account were simply a "skillful paper manipulation of notes and checks". The $3,397 paid for the Chrysler stock was paid out of Mrs. Woosley's share of partnership profits, and, although such profits may be taxable to the petitioner, the property in which they were invested is not to be treated as belonging to the petitioner; and the $1,000 of the $2,308.50 paid on the General Motors stock out of her salary was her own money. See Issues (2) and (3), supra, and authority cited therein. The petitioner did advance $1,250 of the amount contributed by her, but, as the evidence shows, this was charged against her in the settlement of the account between them when the trading account was closed. Since Mrs. Woosley and the petitioner each contributed equally to the funds invested in the joint account, we hold that the respondent erred in taxing Mrs. Woosley's one-half of the gain to the petitioner. ; ; ; . (5) Dividend Income. Upon the evidence, we *81 have found that 12 shares of General Motors stock was acquired by Mrs. Woosley by gift from the petitioner and two shares of Chrysler stock were purchased by her. The dividends on those shares, therefore, are not taxable to the petitioner. The remainder of the dividends involved in this issue were one-half of the dividends paid on shares of stock held in the joint stock trading account considered under issue (4), supra; and, having held that Mrs. Woosley was the owner of a one-half interest in that account, it necessarily follows that her share of such dividends is not taxable to the petitioner. (6) Gain on Sale of Allied Graphite Stock. The petitioner purchased 74 shares of Allied Graphite stock and sold them in 1939 at a profit of $1,154.13. The respondent included the entire profit in the petitioner's income. The petitioner concedes that one-half of that amount is taxable to him, but contends that the other one-half, or $577.06, is taxable to Mrs. Woosley. The petitioner paid the entire purchase price of the shares with his own money, and, although his counsel assert that 36 1/3 shares were purchased in Mrs. Woosley's name, there is no evidence of that fact. Furthermore, there *82 is no evidence that petitioner, prior to the sale, made a gift to her of an interest in the shares. It appears that when he sold the stock he gave her $4,194.79, or one-half of the entire proceeds, instead of one-half of the profit. His explanation of this is: "I thought I was indebted to her and it was at a time when conditions were disturbed at the mill, and I just gave her half of it, trying to square accounts." A month after the sale she gave him her check for $4,750. Since the petitioner paid for the stock, and since we are unable to find that Mrs. Woosley ever acquired any interest therein, the entire gain was realized by the petitioner, and the respondent properly taxed it to him. Decision will be entered under Rule 50.